[Cite as *State v. Moran*, 2022-Ohio-3610.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NOS. 2020-L-114** |
| Plaintiff-Appellee, | **2020-L-115** |
| | **2020-L-116** |
| | **2020-L-117** |
| - v - | |
| JOEY L. MORAN, | Criminal Appeals from the |
| | Court of Common Pleas |
| Defendant-Appellant. | |
| | Trial Court Nos. 2019 CR 001299 |
| | 2019 CR 001300 |
| | 2019 CR 001301 |
| | 2019 CR 001302 |

# O P I N I O N

Decided: October 11, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp,* Lake County Public Defender, and *Melissa A. Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Joey L. Moran, appeals the trial court's October 21, 2020 sentencing entry. On remand from the Supreme Court of Ohio, we affirm.

## I. Introduction

{¶2} In *State v. Moran*, 11th Dist. Lake Nos. 2020-L-114, *et seq.*, 2021-Ohio-1987 ("*Moran I*"), this court affirmed Moran's convictions in four cases. Thereafter, we certified a conflict with respect to our holding that Moran's challenges to the Reagan Tokes Law were not ripe for review. Subsequently, the Supreme Court of Ohio decided *State v. Maddox*, —— Ohio St.3d ———, 2022-Ohio-764, —— N.E.3d ———, in which it concluded that such challenges are ripe for review, and it reversed *Moran I* for further proceedings consistent with *Maddox*. *In re Cases Held for the Decision in State v. Maddox*, 167 Ohio St.3d 409, 2022-Ohio-1352, 193 N.E.3d 553.

{¶3} In *Moran I*, Moran raised the following constitutional challenges to the Reagan Tokes Law in his second through fifth assigned errors, as follow:

> [2.] The defendant-appellant's indeterminate prison sentence of four to six years in trial court Case No. 19 CR 001300, which was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, must be rever[s]ed as the Reagan Tokes Act is unconstitu[t]ionally void for vagueness.
>
> [3.] The defendant-appellant's indeterminate prison sentence of four to six years in trial court Case No. 19 CR 001300, which was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, must be rever[s]ed as the Reagan Tokes Act unconstitutionally violates the separation of powers.
>
> [4.] The defendant-appellant's indeterminate prison sentence of four to six years in trial court Case Number 19 CR 001300, which was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, violates his constitutional right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Ohio Constitution.
>
> [5.] The defendant-appellant's indeterminate prison sentence of four to six years in trial court Case Number 19 CR 001300 which was ordered pursuant to the 'Reagan Tokes Act,' aka Senate Bill 201, violates his constitutional rights to fair trial and

2

due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5 & 10 of the Ohio Constitution.

{¶4} Initially, we note that the constitutionality of the Reagan Tokes Law has been addressed by other Ohio appellate courts, each of which has declared that the sentencing scheme does not facially violate an inmate's constitutional rights. *See, e.g., State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150; *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112 (3d Dist.); *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607 (4th Dist.); *State v. Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684 (5th Dist.); *State v. Maddox*, 2022-Ohio-1350, 188 N.E.3d 682 (6th Dist.); *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (en banc); *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837. The issue is currently pending before the Supreme Court of Ohio. *See, e.g., State v. Hacker*, Sup. Ct. Case No. 2020-1496, and *State v. Simmons*, Sup. Ct. Case No. 2021-0532.

## II.     Standard of Review

{¶5} We review the constitutionality of a statute de novo, i.e., independently and without deference to the trial court's decision. *State v. Jenson*, 11th Dist. Lake No. 2005-L-193, 2006-Ohio-5169, ¶ 5. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus; *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7 ("enactments of the General Assembly enjoy a strong presumption of constitutionality"). "This means that courts must avoid an unconstitutional

3

construction where it is reasonably possible to do so." *Jenson* at ¶ 5, citing *United Air Lines, Inc. v. Porterfield*, 28 Ohio St.2d 97, 100, 276 N.E.2d 629 (1971). "Further, the party challenging the statute bears the burden of proving the unconstitutionality of the statute beyond a reasonable doubt." *Woods v. Telb*, 89 Ohio St.3d 504, 511, 733 N.E.2d 1103 (2000), citing *State v. Thompkins*, 75 Ohio St.3d 558, 560, 664 N.E.2d 926 (1996).

{¶6}    A party may challenge a statute as unconstitutional as applied to a particular set of facts or, as here, on its face. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. "A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Id.*, citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

### III.    The Reagan Tokes Law

{¶7}    The Reagan Tokes Law, effective as of March 22, 2019, implemented a system of indefinite sentencing for non-life felonies of the first and second degree committed on or after the effective date. Pursuant to the Reagan Tokes Law, a sentencing court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) is required to order a minimum prison term under that provision and a maximum prison term as determined by R.C. 2929.144(B).

{¶8}    "Of the many changes to Ohio's criminal sentencing scheme that were brought about by the Reagan Tokes Law, the change that is most pertinent to our present discussion centers around R.C. 2967.271(B)-(F), which permits prison authorities within

4

the executive branch to hold defendants in confinement during the indefinite portion of their sentence for conduct that violates prison rules and regulations." *State v. Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432, ¶ 13.

{¶9} R.C. 2967.271(B) sets forth a "presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(C) provides that the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut the presumption for release if it holds a hearing and determines that any of the three enumerated factors, discussed below, are applicable. If the ODRC rebuts the presumption for release, R.C. 2967.271(D)(1) provides that the ODRC may "maintain" the offender in confinement for a "reasonable period," which "shall not exceed the offender's maximum prison term." R.C. 2967.271(E) provides that the ODRC "shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons" as it provides for the possible release of inmates on parole. Finally, R.C. 2967.271(F) permits the director of the ODRC to recommend a reduction in the offender's minimum prison term (except for sexually oriented offense convictions), which creates a presumption in favor of the reduction that may be rebutted by the prosecutor at a hearing before the sentencing court.

{¶10} Although indefinite sentencing has previously been utilized as the law in Ohio for first- and second-degree felonies, the presumptive release date is novel to the Reagan Tokes Law. *See State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, ¶ 56 (Gwin, J., dissenting), citing *State v. Davis,* 9th Dist. Summit No. 13092, 1987

WL 25743 (Nov. 25, 1987), citing former R.C. 2929.11, and *State v. Jenks,* 2d Dist. Montgomery No. 10264, 1987 WL 20267 (Nov. 16, 1987), citing former R.C. 2929.1.

## IV. Due Process Arguments

{¶11} Here, in his second and fifth assigned errors, Moran maintains that the Reagan Tokes Law is void for vagueness and violates his constitutional rights to fair trial and due process, respectively. These are facial challenges to the constitutionality of the enactment, thereby placing the burden on Moran to prove beyond a reasonable doubt that there is no set of circumstances under which the Reagan Tokes Law would be constitutional.

## V. Due Process Rights

{¶12} "The touchstone of due process is protection of the individual against arbitrary action of government." (Citation omitted.) *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

{¶13} The Due Process Clause in the Fourteenth Amendment to the United States Constitution provides: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *." The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The two clauses are coextensive and provide equivalent due process protections. *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15; *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 21. We can therefore rely on decisions of both the United States Supreme Court and the Ohio Supreme Court. *Anderson* at ¶ 23.

6

**{¶14}** The standard analysis of due process proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011), citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). In other words, "[o]nce it is determined that due process applies, the question remains what process is due. * * * [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At a minimum, "[o]ur courts have long recognized that due process requires both notice and an opportunity to be heard." *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13.

## VI.    The Liberty Interest

**{¶15}** Those who seek to invoke the procedural protection of the Due Process Clause must establish that one of three interests is at stake: life, liberty, or property. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). A "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or "from an expectation or interest created by state laws or policies." (Citations omitted.) *Id.*

**{¶16}** At stake here is an inmate's liberty interest. "[L]awfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). "There is no constitutional or inherent right of a convicted person to be conditionally released [e.g., released on parole] before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal & Corr.*

7

*Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). "However, if *state law* entitles an inmate to release on parole, that entitlement is a liberty interest that is not to be taken away without due process." (Emphasis added.) *Ratliff*, 2022-Ohio-1372, at ¶ 20, citing *Greenholtz* at 11-16 ("where the [United States] Supreme Court so held in the context of a statute providing that the Nebraska parole board 'shall' release parole-eligible inmates unless one of several factors specified in the statute should be found to exist").

{¶17} With this in mind, the relevant sections of the Reagan Tokes Law provide as follows:

> (B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be *a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.*
>
> (C) The presumption established under division (B) of this section is a *rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released* from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. *The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies*:
>
> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not

Case Nos. 2020-L-114, 2020-L-115, 2020-L-116, 2020-L-117

prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(Emphasis added.)  R.C. 2967.271.

{¶18}  "The legislature by choosing the language 'there shall be a presumption that the person *shall be released*' and 'Unless the department rebuts the presumption, the offender *shall be released*,' within the Reagan Tokes Law has arguably created enforceable liberty interests in parole*."  Ratliff* at ¶ 30, citing *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (where the United States Supreme Court so held in the context of a Montana statute providing that the parole board "shall" release a prisoner, subject to certain restrictions).  *See also State ex rel. Bailey v. Ohio Parole Bd.*, 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶ 10 ("The Revised Code creates an inherent expectation 'that a criminal offender will receive *meaningful* consideration for parole.'" (Citation omitted; emphasis sic.)); and *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236-237 (6th Cir.1991) (where the court suggested that a protected liberty interest would be created by regulations alone if they "created an explicit presumption of entitlement to release on parole" or "otherwise

9

used 'mandatory language' in connection with 'specific substantive predicates' for release on parole").

{¶19} A liberty interest is always at stake when an inmate is entitled to release from confinement, whether that entitlement is presumptive or otherwise. And there is no disagreement that some liberty interest arises from an expectation or interest that is created by the Reagan Tokes Law. *See Eaton*, 2022-Ohio-2432, at ¶ 127 ("The courts that have considered similar due process challenges to the Reagan Tokes Law have had no difficulty in concluding that defendants do, in fact, have a liberty interest sufficient to trigger due process safeguards."). Nevertheless, the exact nature of this liberty interest—and, by extension, the nature of the process due—has been the subject of much debate within and amongst our sibling courts. This disagreement is discussed further below, pertaining to the procedural safeguards of the additional term hearing. But first, we consider notice.

## VII.   Notice of Proscribed Conduct

{¶20} "In the criminal context, the requirement of notice concerns 'the accused's right to fair notice of the proscribed conduct.'" *State v. Philpotts*, 2019-Ohio-2911, 132 N.E.3d 743, ¶ 44 (8th Dist.), quoting *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 33 (4th Dist.), citing *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "This refers to the principle that due process requires criminal statutes to be written clearly so that individuals are provided with a fair warning that a certain conduct is within the statute's prohibition." *Philpotts* at ¶ 44, citing *Wheatley* at ¶ 33, citing *Screws v. United States*, 325 U.S. 91, 103-104, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Connally* at 391 ("a statute which either forbids or requires the doing of an act in terms so

10

vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law"); and *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 23 (due process requires law to be written so that the public can adequately inform itself before acting).

{¶21} Again, in order to rebut the presumptive release date, the ODRC is required to conduct a hearing and make at least one of the following statutory findings before it may maintain the inmate beyond the presumptive release date:

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed *institutional rule infractions* that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a *violation of law* that was not prosecuted, and the infractions or violations demonstrate that the offender *has not been rehabilitated*.
>
> (b) *The offender's behavior* while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender *continues to pose a threat to society*.
>
> (2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been *placed by the department in extended restrictive housing* at any time within the year preceding the date of the hearing.
>
> (3) At the time of the hearing, the offender is classified by the department as a *security level three, four, or five, or at a higher security level*.

(Emphasis added.)  R.C. 2967.271(C).

Case Nos. 2020-L-114, 2020-L-115, 2020-L-116, 2020-L-117

**{¶22}** The inmate rules of conduct are set forth in Ohio Adm.Code 5120-9-06. The disciplinary procedures for violations of inmate rules of conduct before the rules infraction board are set forth in Ohio Adm.Code 5120-9-08. The procedures for when and why an inmate may be placed in a restrictive housing assignment are set forth in Ohio Adm.Code. 5120-9-10. The hearing procedure for release consideration is set forth in Ohio Adm.Code 5120:1-1-11. *See also Ratliff*, 2022-Ohio-1372, at ¶ 47. Each of these Ohio Administrative Code procedures provides, at a minimum, notice and an opportunity to be heard. *See also id.* at ¶ 48.

**{¶23}** Accordingly, we conclude that an inmate is provided with advance notice under the Revised Code and the Ohio Administrative Code of the behavior and conduct that may contribute to or could result in the ODRC rebutting the presumption of release. Therefore, Moran's second assigned error lacks merit.

## VIII. Procedural Safeguards

**{¶24}** With respect to Moran's fifth assigned error regarding procedural safeguards, "Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right." (Footnote omitted.) *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8, citing *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). "[T]he opportunity to be heard must occur at a meaningful time and in a meaningful manner." (Citations omitted.) *Cowan* at ¶ 8*; see also Vitek v. Jones*, 445 U.S. 480, 500, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (Powell, J., concurring) ("The essence of procedural due process is a fair hearing.").

12

{¶25} As stated above, our sibling districts are at odds regarding the extent of the liberty interest and the process that safeguards a fair hearing. The disagreement is rooted in whether the rebuttable presumption of release in the Reagan Tokes Law is most analogous to parole revocation proceedings or parole release proceedings (alternatively referred to as parole eligibility proceedings).

{¶26} "The distinction between parole eligibility and parole revocation is significant when discussing due process because the liberty interest in parole revocation – which entails taking someone's freedom away – is much greater than the liberty interest in parole eligibility – which typically entails the hope or anticipation of freedom." *Delvallie*, 2022-Ohio-470, at ¶ 139 (Forbes, J., dissenting), citing *Greenholtz*, 442 U.S. at 9 ("[P]arole *release* and parole *revocation* are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole [revocation], and being denied a conditional liberty that one desires[,]" as in parole release or eligibility. (Emphasis sic.)). Although neither affords an inmate the "full panoply of rights due" in a criminal prosecution, *Morrissey*, 408 U.S. at 480, parole revocation requires greater procedural safeguards than parole eligibility or parole release. *Greenholtz* at 10.

{¶27} The Sixth and Twelfth Districts have concluded that the additional term hearings under the Reagan Tokes Law are more analogous to parole revocation proceedings. *State v. Stenson*, 2022-Ohio-2072, 190 N.E.3d 1240, ¶ 31 (6th Dist.) ("the Reagan Tokes Law creates a liberty interest more akin to probation revocation decisions"); *Guyton,* 2020-Ohio-3837, at ¶ 17 ("[t]he hearings conducted by the ODRC under R.C. 2967.271(C) are analogous to parole revocation proceedings, probation revocation proceedings, and postrelease control violation hearings"). The Twelfth District

13

explains this conclusion merely by stating that "[t]his is because * * * all three situations concern whether a convicted felon has committed violations while under the control and supervision of the ODRC." *Guyton* at ¶ 17. The Sixth District undertakes a more thorough analysis, explaining that "the Reagan Tokes Law functions unlike the merely discretionary decision to release an offender on parole," which is largely "'subjective' and 'predictive.'" *Stenson* at ¶ 28-30, quoting *Greenholtz* at 13. Rather, the Sixth District finds that the additional term hearing of the Reagan Tokes Law functions more like a parole revocation decision by requiring "two determinations under R.C. 2967.271(C)(1): (1) did the offender, during his incarceration, commit certain rule violations or unprosecuted crimes?—'wholly retrospective factual question[s]'; and (2) does this behavior demonstrate that the offender still poses a threat to society?" *Stenson* at ¶ 30, quoting *Greenholtz* at 8. This conclusion is also expressly favored by the five dissenting judges in the Eighth District's en banc opinion. *See Delvallie* at ¶ 140-142 (Forbes, J., et al., dissenting) ("Unlike Ohio's parole eligibility proceedings, the Reagan Tokes Law includes an express presumption of release[.]") and ¶ 192 (Mays, J., et al., dissenting in part).

{¶28} Under this parole revocation view, the process that is due with regard to the additional term hearing under the Reagan Tokes Law is set forth in the United States Supreme Court's decision in *Morrissey*. *See Stenson* at ¶ 31; *Guyton* at ¶ 14; and *Delvallie* at ¶ 148 (Forbes, J., dissenting). Pursuant to *Morrissey*, the minimum requirements of due process include the following for parole revocation proceedings:

> (a) written notice of the claimed violations of parole;
>
> (b) disclosure to the parolee of evidence against him;
>
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;

14

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey* at 489; *accord State v. Miller*, 42 Ohio St.2d 102, 104, 326 N.E.2d 259 (1975).

**{¶29}** On the other hand, the Second District has concluded that "requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole," i.e., akin to parole eligibility/release, rather than parole revocation. *State v. Leet,* 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶ 17. "Simply put, if [the offender] commits rule infractions or crimes while in prison, he may be required to serve the entire sentence already imposed by the trial court." *Id.* This conclusion, that the liberty interest at stake under the Reagan Tokes Law is most analogous to parole eligibility/release, is also favored by the Sixth District's lead opinion in *Eaton*, albeit the minority view of that panel's decision. *Eaton*, 2022-Ohio-2432, at ¶ 133. The author of that opinion provides several reasons in support of this conclusion:

> First, the defendant is suffering a loss of his physical liberty in institutional confinement in both situations [the initial parole release hearing and the additional term hearing under the Reagan Tokes Law], unlike the relative freedom he enjoys when already released on parole or post-release control. This is important because a defendant who is already in confinement has a reduced liberty interest and is therefore entitled to less process than a defendant who is already free.
>
> Second, in both the parole release hearing and the [additional term] review hearing under the Reagan Tokes Law, the reviewing body is focused upon whether the defendant's

15

conduct justifies his *release* from confinement, not whether he should be *returned* to confinement. Again, the liberty interests are different and thus the protections to which a defendant is entitled are different.

Since the trial court imposes *both* the minimum and maximum sentence, a defendant sentenced under the Reagan Tokes Law is still serving his sentence at the time of the additional term hearing and, if ordered to serve the indefinite portion of the sentence, will continue to serve the sentence previously imposed by the trial court. Therefore, the issue in the additional term hearing is release from confinement, not revocation of parole. Stripping away the semantics, the reality here is that, from [the inmate's] perspective, he is presently incarcerated and wishes to be freed from incarceration – by definition, this is release and not revocation.

(Emphasis sic.) *Id.* at ¶ 131-132. Further support for this view can be found in the fact that R.C. 2967.271 is referenced in R.C. 2967.13, the statute governing "parole eligibility" ("(F) A prisoner serving a stated prison term that is a non-life felony indefinite prison term shall be released in accordance with sections 2967.271 and 2967.28 of the Revised Code."); *compare* R.C. 2967.15 (the statute governing parole revocation makes no mention of R.C. 2967.271).

{¶30} Under this parole eligibility/release view, the process that is due with regard to the additional term hearing under the Reagan Tokes Law is equivalent to "the process required for defendants under the presumptive parole regime"—i.e., "minimal process including an opportunity to be heard and an explanation of the basis for denial of parole release." *Eaton* at ¶ 137, citing *Greenholtz*, 442 U.S. at 16 ("The Constitution does not require more."); *Swarthout*, 562 U.S. at 220 ("In the context of parole, we have held that the procedures required are minimal."); *see also Bailey*, 2017-Ohio-9202, at ¶ 9-10.

{¶31} We find it premature to reach a conclusion on this issue. Again, "[a] facial challenge to a statute is the most difficult to bring successfully because the challenger

16

must establish that there exists no set of circumstances under which the statute would be valid." *Harrold*, 2005-Ohio-5334, at ¶ 37, citing *Salerno*, 481 U.S. at 745. To prevail, it must be shown that the statute cannot be constitutionally applied in *any* circumstances. *Wymslo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Harrold* at ¶ 37, citing *Salerno* at 745. Additionally, we caution that "[t]he judicial authority to override the legislative will should be used with extreme caution and restraint, because declaring a statute unconstitutional based on a facial challenge is an 'exceptional remedy.'" *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 96 (Kennedy, J., dissenting), quoting *Carey v. Wolnitzek,* 614 F.3d 189, 201 (6th Cir.2010); *see also Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), quoting *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ("Facial adjudication carries too much promise of 'premature interpretation of statutes' on the basis of factually barebones records.").

{¶32} Here, because the ODRC has not sought to extend appellant's term beyond the presumptive minimum sentence, appellant's challenge to the procedural safeguards of the additional term hearing is necessarily a facial challenge to the Reagan Tokes Law. *See Stenson*, 2022-Ohio-2072, at ¶ 31; *see also Delvallie*, 2022-Ohio-470, at ¶ 53, citing *Morrissey,* 408 U.S. at 480 (an inmate's liberty interest in the right to be released from a prison term "does not arise until after the offender is sentenced and his conviction deemed final").

{¶33} As noted by the Sixth and Eighth Districts, the United States Supreme Court's opinion in "*Morrissey* is instructive because it necessarily implies that the specific procedural requirements applicable to protect a particular liberty interest need not be set forth in the legislation itself." *Stenson* at ¶ 32, citing *Morrissey*; *Delvallie* at ¶ 66 ("*Morrissey* itself does not even require the legislature to codify the procedural details, nor does it require the executive agency to formally draft rules in compliance with *Morrissey*."). We agree. Albeit in the specific context of the process due a parolee whose parole is being revoked, the Court acknowledged that most states have enacted legislation setting forth procedural requirements for parole revocation hearings, while others have done so by judicial decision. *Morrissey* at 488 ("We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds."). "In other words, *Morrissey* suggests that the Reagan Tokes Law may not be found to be unconstitutional, on its face, as violating due process merely because the specific procedures for invoking an additional period of incarceration are not set forth in the Law itself." *Stenson* at ¶ 32.

{¶34} "No constitutional provision requires the legislature to expressly set forth each and every right afforded to an offender at every stage of proceedings created by statutory process. For that, the legislature is free to delegate authority to the executive branch." *Delvallie* at ¶ 58, citing *AMOCO v. Petroleum Underground Storage Tank Release Comp. Bd.*, 89 Ohio St.3d 477, 480, 733 N.E.2d 592 (2000) (the General Assembly may delegate rule-making authority to an executive agency); *State v. Schreckengost*, 30 Ohio St.2d 30, 32, 282 N.E.2d 50 (1972) ("Delegation to state administrative officials of the authority to adopt and enforce regulations to implement such

18

a declared legislative policy is not, per se, unlawful."); and *O'Neal v. State*, 2020-Ohio-506, 146 N.E.3d 605, ¶ 50 (10th Dist.) ("the General Assembly constitutionally may delegate authority to promulgate rules, policies, and regulations to subordinate boards and agencies"). "[T]he legislature is not required to codify all rules and procedures under the statutory provision but instead can defer to the executive agency's establishment of its own rules or procedures to safeguard constitutional concerns, which must be challenged through the appropriate mechanisms." *Delvallie* at ¶ 59, citing *Wilkinson*, 545 U.S. at 226 and *Wolff*, 418 U.S. at 563 (both cases involved reviewing the rules or procedures established by the executive agency for constitutional compliance).

{¶35} R.C. 2967.271 does not include procedural requirements for the additional term hearing, nor does it include language authorizing the ODRC to draft rules and regulations for the review hearings. Nevertheless, the enabling statute R.C. 5120.01 requires that "[a]ll duties" conferred upon the ODRC by the legislature "shall be performed under the rules and regulations that the director prescribes and shall be under the director's control." *See Delvallie*, 2022-Ohio-470, at ¶ 60, quoting *Bibler v. Stevenson*, 150 Ohio St.3d 144, 2016-Ohio-8449, 80 N.E.3d 424, ¶ 15 ("R.C. 2967.271 'does not exist in a vacuum. It is a creature of the Revised Code, it is subservient to the Revised Code, and it necessarily incorporates the Revised Code.'").

{¶36} Expressly under the authority of R.C. 5120.01 and R.C. 2967.271, the Director of the ODRC promulgated ODRC Policy 105-PBD-15, available at https://drc.ohio.gov/policies/parole-board (last visited July 25, 2022). "The purpose of this policy is to establish a standard procedure for the [ODRC] to carry out its statutory duties efficiently and consistently concerning the Additional Term Hearing Process for persons

19

sentenced under Senate Bill 201 (132nd Ohio General Assembly)." ODRC Policy 105-PBD-15, Section II. The Policy itself is set forth as follows:

> Pursuant to the authority granted to ODRC under ORC 2967.271, it is the policy of ODRC to establish an Additional Term Hearing process for conducting hearings to determine whether the presumption of release at the expiration of an incarcerated adult's minimum term is rebutted, and if so, to maintain incarceration of an incarcerated adult for an additional period of time, up to the maximum term. Incarcerated adults sentenced under ORC 2967.271 may be subject to an Additional Term Hearing following a finding of guilt of certain Inmate Rules of Conduct by the Rules Infraction Board (RIB) and affirmance of that finding after completion of any RIB appeals or following a recommendation from the Annual Security Review Team.

ODRC Policy 15-PBD-15, Section V.

{¶37} Two issues arise: (1) whether the policy is of sufficient legal force and effect to fill the legislative procedural gaps left by R.C. 2971.271; and (2) whether the policy provides constitutionally sufficient due process. *See, e.g., Delvallie* (where the issues are debated at length in the en banc and dissenting opinions). These issues, however, should be addressed in an as-applied challenge to the procedural safeguards in effect at the time, if ever, appellant is subjected to an additional term hearing. *But see Eaton*, 2022-Ohio-2432, at ¶ 141 (addressing the substance and constitutional sufficiency of the administrative policy). "This cannot be overemphasized. The appropriate mechanism to challenge the validity of policies, rules, regulations, or protocols established by the executive is through a separate declaratory judgment or habeas action seeking to preclude ODRC from enforcing them, which only occurs at the actual time when those policies, rules, regulations, or protocols are being applied against the inmate." (Citations omitted.) *Delvallie* at ¶ 91.

20

**{¶38}** "[G]iven that this is a facial challenge to the Law, it cannot be said at this juncture that the Law 'cannot be applied constitutionally in any circumstances.' Should the Law ultimately be applied in a manner that is unconstitutional, an offender would not be precluded from challenging the Law as applied." *Stenson*, 2022-Ohio-2072, at ¶ 33, citing *Wilkinson*, 545 U.S. at 230 ("If an inmate were to demonstrate that the New Policy did not in practice operate in [a constitutionally-permissible] fashion, resulting in a cognizable injury, that could be the subject of an appropriate future challenge."); *see also Delvallie*, 2022-Ohio-470, at ¶ 90 ("If the sentence, as imposed, is valid at this stage, an inmate has the later right to challenge the actual process or procedures that particular inmate will be subjected to when the sentence is actually carried out by the executive branch.").

**{¶39}** Accordingly, Moran's arguments contained in his fifth assigned error pertaining to the procedural safeguards of the additional term hearing are as-applied challenges and not ripe for review. Accordingly, we conclude that the Reagan Tokes Law does not, on its face, violate the constitutional right to due process.

## IX. Separation of Powers

**{¶40}** In his third assigned error, Moran argues that the Reagan Tokes Law violates separation of powers. "The Ohio Supreme Court has said that '[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.'" *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 21, quoting *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of the syllabus.

21

{¶41} In arguing that the Reagan Tokes Law violates the separation of powers, offenders have generally relied on *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), where the Supreme Court of Ohio held unconstitutional former R.C. 2967.11, commonly known as "the bad-time law." The relevant portion of the bad-time law provided that "[a]s part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner *by extending the prisoner's stated prison term* for a period of fifteen, thirty, sixty, or ninety days in accordance with this section." (Emphasis added.) Former R.C. 2967.11(B).

{¶42} The *Bray* court concluded that the various provisions of former R.C. 2967.11 enabled "the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime. This is no less than the executive branch's acting as judge, prosecutor, and jury. R.C. 2967.11 intrudes well beyond the defined role of the executive branch as set forth in our Constitution." *Bray* at 135.

{¶43} However, after deciding *Bray*, the Ohio Supreme Court decided *Woods*, 89 Ohio St.3d 504, "holding that the post-release-control statute did not violate the separation-of-powers doctrine." *Ferguson*, 2020-Ohio-4153, at ¶ 22. "The post-release-control statute required a court to impose the terms of post-release control and left it to the Adult Parole Authority (APA) to determine whether to impose sanctions for any violation of the terms. The Court said that this statute was 'clearly distinguishable' from the bad-time statute at issue in *Bray*." *Id.* at ¶ 22, quoting *Woods* at 512. "Unlike additional prison time under the latter statute, post-release-control terms were made part of the original judicially imposed sentence." *Ferguson* at ¶ 22. "'[B]ecause the APA's

22

discretion in managing post-release control does not impede the function of the judicial branch,' said the Court, the post-release-control statute did not violate the separation-of-powers doctrine." *Id.* at ¶ 22, quoting *Woods* at 512.

{¶**44**} The Second District in *Ferguson* determined that the Reagan Tokes Law does not violate separation of powers, noting that the Ohio Supreme Court had "made it clear that, when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence." *Ferguson* at ¶ 23, citing *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19, *overruled on other grounds*, citing *Woods*. "Such is the case under the scheme established by the Reagan Tokes Law." *Ferguson* at ¶ 23. The *Ferguson* court explained that pursuant to the Reagan Tokes Law:

> A court imposes both the minimum and maximum prison terms, including both in its sentence. The [ODRC] then determines whether the offender merits more than the minimum and up to the maximum imposed. In terms of the separation of powers, the delegation of power to the [ODRC] is like the system of post-release control: "Those terms are part of the actual sentence, unlike bad time, where a crime committed while incarcerated resulted in an additional sentence not imposed by the court. In other words, the court imposes the full sentence and the [ODRC] determines whether violations merited its imposition."

*Id.* at ¶ 23, quoting *Woods* at 511.

{¶**45**} Accordingly, appellate courts considering this challenge to the Reagan Tokes Law have concluded that the law does not violate separation of powers. *Ferguson* at ¶ 23 (2d Dist.); *Hacker*, 2020-Ohio-5048, at ¶ 22-23 (3d Dist.); *Alexander*, 2022-Ohio-1812, at ¶ 56 (4th Dist.); *Ratliff*, 2022-Ohio-1372, at ¶ 56 (5th Dist.); *Maddox*, 2022-Ohio-

1350, at ¶ 7 (6th Dist.); *Delvallie*, 2022-Ohio-470, at ¶ 36 (8th Dist.); *State v. Henderson*, 12th Dist. Warren No. CA2020-11-072, 2021-Ohio-3564, ¶ 10-12. We agree. Accordingly, Moran's third assigned error lacks merit.

## X. Right to Jury Trial

{¶46} In his fourth assigned error, Moran argues that the Reagan Tokes Law violates the right to a jury trial. The Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution protect the right to a jury trial. "In *Apprendi*, the [Supreme Court of the United States] held that the Sixth Amendment requires that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum,' except for the fact of a prior conviction, 'must be submitted to a jury, and proved beyond a reasonable doubt.'" *State v. Bowers*, 163 Ohio St.3d 28, 2020-Ohio-5167, 167 N.E.3d 947, ¶ 13, quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490,120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* did not hold that all judicial factfinding is violative of the right to a jury trial, as it explained that trial courts may "exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (Emphasis sic.) *Apprendi* at 481. The *Apprendi* Court determined that "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (Footnote omitted.) *Id.* at 494.

{¶47} Thereafter, in *Blakely v. Washington*, 542 U.S. 296, 304, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court reaffirmed its holding in *Apprendi*, explaining that "[w]hen a judge inflicts punishment that the jury's verdict alone

24

does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Id.*, quoting 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed.1872). In *Blakely*, the Supreme Court illustrated the distinction between permissible and impermissible judicial factfinding in the context of determinate and indeterminate sentencing schemes:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

(Emphasis sic.) *Blakely* at 308-309.

{¶48} Subsequently, in *Alleyne v. United States*, 570 U.S. 99, 108, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the United States Supreme Court held that the *Apprendi* "principle applies equally to facts increasing mandatory minimums: 'Facts that increase the mandatory minimum sentence are * * * elements and must be submitted to the jury and found beyond a reasonable doubt.'" *Bowers* at ¶ 13, quoting *Alleyne* at 108. *See also United States v. Haymond*, ––– U.S. ––––, 139 S.Ct. 2369, 2379, 204 L.Ed.2d 897

(2019), quoting *Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("As this Court has repeatedly explained, any 'increase in a defendant's authorized punishment contingent on the finding of a fact' requires a jury and proof beyond a reasonable doubt 'no matter' what the government chooses to call the exercise.").

{¶49} More recently, the Supreme Court addressed *Apprendi* and its progeny in *Haymond*. In *Haymond*, the defendant was convicted of possessing child pornography, for which the district judge was authorized to impose a prison term of zero to ten years and a period of supervised release between five years and life. *Id.* at 2373. The district judge sentenced Haymond to a prison term of 38 months, followed by ten years of supervised release. *Id.* After completing his prison sentence, while on supervised release, a search of Haymond's computers revealed what appeared to be images of child pornography, and the government then sought to revoke supervised release. *Id.* at 2374. A district court conducted a hearing and found that, by a preponderance of the evidence, Haymond knowingly possessed and downloaded numerous of these images. *Id.* The district court sentenced Haymond pursuant to 18 U.S.C. Section 3583(k), which provided that "if a judge finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses, including the possession of child pornography, the judge *must* impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction." (Emphasis sic. and footnote omitted.) *Haymond* at 2374. The special provisions of Section 3583(k) can be contrasted with the "typical supervised release procedure" contained in Section 3583(e), "where the maximum prison time for revocation is determined solely by the defendant's underlying conviction, and the judge

26

can refuse to revoke the supervised release altogether, even if the defendant has engaged in criminal behavior." Horner, *Haymond's Riddles: Supervised Release, the Jury Trial Right, & the Government's Path Forward*, 57 Am. Crim. L. Rev. 275, 276 (2020). In *Haymond*, the Supreme Court found Section 3583(k) unconstitutional as applied. *Haymond* (per Justice Gorsuch, with three Justices concurring and one Justice concurring in the judgment). However, the Supreme Court limited its decision to Section 3583(k) and specifically did not reach the issue of the constitutionality of Section 3583(e). *Id.* at 2382, fn. 7.

**{¶50}** Unlike Section 3583(k), the Reagan Tokes Law does not mandate a new minimum prison term for an offender who has been released from confinement. Given the limited context of *Haymond* and because the Reagan Tokes Law does not permit the trial court or the ODRC to impose a new sentence unrelated to the initial sentence, *Haymond* is inapplicable.

**{¶51}** Without regard to *Haymond*, based upon the *Apprendi* line of cases, many offenders challenging the Reagan Tokes Law have argued that "the presumptive-release provisions of R.C. 2967.271 violates [an offender's] right to a trial by jury in that it permits ODRC (and not the jury) to engage in fact-finding increasing the offender's minimum prison term, a right protected by the Sixth Amendment [to] the United States Constitution applicable to the states through the due process clause of the Fourteenth Amendment [to] the United States Constitution and also guaranteed by Article I, Section 5 of the Constitution of the State of Ohio." *Hacker*, 2020-Ohio-5048, at ¶ 17.

**{¶52}** Challengers to the law have focused on imprisonment extending beyond the presumptive release date and not on the sentence initially imposed by the trial court,

27

which, aside from *Haymond*, has been the focus of the *Apprendi* line of cases. However, unlike the laws at issue in *Apprendi*, *Blakely,* and *Alleyne*, the Reagan Tokes Law does not permit the trial court or the ODRC to lengthen the statutorily authorized sentence based upon facts not found by the jury. *Delvallie*, 2022-Ohio-470, at ¶ 42, quoting *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) (the Reagan Tokes Law does not permit a trial court to "impose a sentence 'beyond the prescribed statutory maximum' based on consideration and determination of facts not considered by the jury"); *Ratliff*, 2022-Ohio-1372, at ¶ 60. "The only sentencing discretion provided to the trial court lies with the length of the minimum term under R.C. 2929.14(A)(1)(a) and (A)(2)(a); the maximum term is determined based upon a mathematical formula as applied to the minimum term of imprisonment. The maximum prison term component of a Reagan Tokes indefinite sentence is therefore authorized by the jury's guilty verdict and is not based upon factors not submitted to the jury." *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 17.

{¶53} As explained by the Twelfth District in *Rogers*:

> Once imposed by the trial court, the indefinite sentence is then implemented by ODRC. ODRC simply enforces the sentence imposed by the trial court and its review is limited to determining the offender's release date. R.C. 2967.271 establishes a presumptive release date upon completion of the minimum term. Once the minimum term is served, ODRC may rebut the presumption of release under certain conditions and enforce the remainder of the maximum term already imposed by the trial court. R.C. 2967.271(B). However, "[t]hat codified process does not alter the fact that the trial court imposed a maximum term as calculated under R.C. 2929.144." *State v. Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, ¶ 35. In rebutting the presumption of release, ODRC "is not extending the defendant's prison term or imposing its own sentence for violations that occur while the offender is serving the imposed term of imprisonment." *Id.*

28

at ¶ 7. In other words, ODRC does not "increase" a penalty based upon facts not found by a jury but merely administers the sentence already imposed by the trial court for conviction of an offense for which the offender has the right to a jury trial.

*Rogers* at ¶ 18.

{¶54} Accordingly, appellate courts reviewing this challenge have found that the Reagan Tokes Law does not violate an offender's right to jury trial. *State v. Thompson*, 2d Dist. Clark No. 2020-CA-60, 2021-Ohio-4027, ¶ 24; *State v. Freeman*, 3d Dist. Allen No. 1-21-17, 2022-Ohio-1991, ¶ 13; *Ratliff* at ¶ 61 (5th Dist.); *Maddox*, 2022-Ohio-1350, at ¶ 7 (6th Dist.); *Delvallie* at ¶ 47 (8th Dist.); *Rogers* at ¶ 14-18 (12th Dist.). We agree. Accordingly, Morans's fourth assigned error lacks merit.

## XI.    Conclusion

For these reasons, we conclude that Moran has not established that the Reagan Tokes Law is unconstitutional on its face. Moran's second through fifth assigned errors are without merit.

{¶55} The judgment is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.